UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARK S. HUFFSTETLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18-CV-210-DCP |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]. Mark S. Huffstetler ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

### I. PROCEDURAL HISTORY

On June 12, 2014, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. and 1381 *et seq*., claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on June 1, 2013. [Tr. 11, 199–213]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 114]. A hearing was held on March 21, 2017. [Tr. 40–56]. On July 21, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 11–22]. The Appeals Council denied Plaintiff's request for review on April 9, 2018 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on May 30, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since June 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: peripheral neuropathy; hypertension; status post cerebellar hemorrhage; osteoarthritis; persistent depressive disorder; social anxiety disorder; and unspecified trauma and stressor related disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant should avoid extreme cold; can

frequently (two-thirds of the workday) deal with people and change; and can concentrate for at least two hours at a time.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 9, 1965 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 16, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14–22].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

> immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ improperly found that his carpal tunnel syndrome was not a medically determinable impairment at step two of the disability determination. [Doc. 17 at 3–7]. Next, Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to appropriately consider his need for a cane or walker, or explain why any limitations related to his need for a cane or walker were not included in the RFC. [*Id.* at 7–12]. Lastly, Plaintiff claims that the ALJ failed to account for mental limitations set forth in the opinions of consultative examiner Patricia A. Maffeo, Ph.D., and nonexamining state agency consultant, Jayne Dubois, Ph.D., despite affording significant weight to their opinions. [*Id.* at 12–18].

### A. ALJ's Step Two Determination

Plaintiff asserts that the ALJ erred when she failed to find that his carpal tunnel syndrome was a medically determinable impairment at step two of the disability determination, as well as that substantial evidence supports a finding that his carpal tunnel syndrome was also a severe impairment. [Doc. 17 at 4]. Therefore, Plaintiff claims that the ALJ further erred by "failing to continue to consider this impairment beyond step [two] of the sequential evaluation process." [*Id.*].

The Commissioner maintains that the ALJ properly considered Plaintiff's complaints of hand pain by finding Plaintiff's peripheral neuropathy, osteoarthritis, and the effects of Plaintiff's stroke to be severe impairments. [Doc. 24 at 8]. Additionally, the Commissioner notes that the ALJ found several severe impairments at step two, and continued to review Plaintiff's carpal tunnel syndrome in the RFC determination. [*Id.* at 9].

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments

6

constitute "medically determinable" impairments. *See* 20 C.F.R. §§§ 404.1508; 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508; 416.908. Further, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Lastly, "[i]f an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *See Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017) (internal citations omitted).

Additionally, to be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a de minimis hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

During step two of the disability determination, the ALJ failed to explicitly designate whether she found Plaintiff's carpal tunnel syndrome to be a severe impairment, a medically determinable—but nonsevere—impairment, or a non-medically-determinable impairment. However, "[c]ourts in this district have recognized generic or broad terminology to encompass

7

more specific diagnoses" when reviewing an ALJ's consideration of severe impairments. *See Cartwright v. Saul*, No. 3:18-CV-244-HBG, 2019 WL 4248894, at *4 (E.D. Tenn. Sept. 6, 2019). "Peripheral neuropathy can affect one nerve (mononeuropathy), two or more nerves in different areas (multiple mononeuropathy) or many nerves (polyneuropathy). Carpal tunnel syndrome is an example of mononeuropathy." *Peripheral Neuropathy*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 (last visited September 23, 2019), *cited with approval in*, *Bruce W. v. Saul*, No. 1:18-CV-02751-MJD-SEB, 2019 WL 2559544, at *3 (S.D. Ind. June 20, 2019) (finding the ALJ considered the plaintiff's carpal tunnel syndrome as a severe impairment where the ALJ found that the plaintiff's peripheral neuropathy was a severe impairment, as "[n]either party recognizes that peripheral neuropathy is a general diagnostic term that includes carpal tunnel syndrome"). Accordingly, the Court finds that the ALJ's determination that Plaintiff's peripheral neuropathy constituted a severe impairment appropriately encompassed her consideration of Plaintiff's carpal tunnel syndrome as a medically determinable impairment at step two.

Further, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ

8

characterized any other alleged impairment as severe or not severe is of little consequence.").

Here, in the disability decision, the ALJ reviewed Plaintiff's complaints of hand and foot pain, including detailing a May 26, 2016 EMG/nerve conduction study of Plaintiff's bilateral upper and lower extremities, which was "consistent with bilateral carpal tunnel syndrome, bilateral ulnar neuropathy, and bilateral lower extremity sensorimotor polyneuropathy." [Tr. 17]; *see* [Tr. 407, 441, 612]. Therefore, regardless of whether the ALJ erred by failing to include Plaintiff's carpal tunnel syndrome as a separate impairment at step two, the Court finds that the ALJ found that Plaintiff had several severe impairments, and proceeded to examine the effect of Plaintiff's carpal tunnel syndrome in the RFC determination. *See, e.g.*, *Bruce W.*, 2019 WL 2559544, at *3 ("Regardless of whether the ALJ found carpal tunnel syndrome to be a severe impairment at Step Two, the Court does not find that the ALJ ignored the evidence related to the impairment at the subsequent steps of the sequential evaluation process."); *Negron v. Comm'r of Soc. Sec.*, No. 3:14-CV-00852, 2017 WL 2546336, at *11 (M.D. Tenn. June 13, 2017) ("Also, the fact that some of a claimant's diagnosed impairments may have gone unmentioned at the step two severity determination is 'legally irrelevant.'") (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)); *Cavacas v. Comm'r of Soc. Sec.*, No. 2:12-CV-234, 2013 WL 3811615, at *5 (D. Vt. July 22, 2013) ("But even assuming the ALJ's failure to discuss Cavacas's syncope at step two was error, the error was harmless. At step two, the ALJ identified other severe impairments . . . and thus, proceeded with the subsequent steps of the sequential evaluation."). As any potential error at step two would be harmless, Plaintiff's allegations of error do not constitute a basis for remand.

**B.     Plaintiff's Use of a Cane or Walker**

Plaintiff asserts that the ALJ failed to appropriately consider his use of a cane or walker in the RFC determination. First, Plaintiff maintains that the record establishes his need for an

9

ambulatory device. [Doc. 17 at 8]. Plaintiff contends that the ALJ improperly failed to include a limitation related to Plaintiff's need for an ambulatory assistive device, or explain why such a limitation was not adopted. [*Id.* at 10]. Therefore, Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because it does not "account for Plaintiff's need to ambulate with a cane or walker, or the additional reaching, handling and fingering limitations inherently associated with Plaintiff's need to grasp a cane or walker while standing/walking and performing work-related activities." [*Id.* at 8].

The Commissioner responds that the ALJ acknowledged that Plaintiff used a cane following his September 2016 stroke, but found that he could perform light exertional work activities. [Doc. 24 at 16]. Additionally, the Commissioner claims that the ALJ properly considered evidence from the entire relevant period—including gaps in Plaintiff's treatment and his reported daily activities—in evaluating his complaints. [*Id.*].

Plaintiff suffered a stroke on September 3, 2016, and was hospitalized for nearly three weeks, until September 23, 2016. [Tr. 644–882]. Treatment notes reflect that Plaintiff presented with an intracranial bleed, and was discharged to home health physical therapy and speech therapy. [Tr. 657]. Plaintiff points to eleven treatment notes during his hospitalization indicating that he used a rolling walker to sit, stand, as well as perform physical therapy. [Tr. 814–15, 820, 822, 826, 828, 834, 836, 840, 842, 858, 854]. Further, in addition to Plaintiff's gait training, on the day of his discharge, physical therapy records demonstrate that he used a rolling walker to assist in sitting to standing, as well as static and dynamic standing. [Tr. 812]. However, Plaintiff was also able to walk 400 feet with the use of his rolling walker. [Tr. 813].

After his discharge from the hospital, Plaintiff was seen by Julie Brewer, M.D., on October 11, 2016, for a follow-up on his cerebrovascular accident, and it was noted that he continued to

use a walker. [Tr. 895]. Treatment notes reflect that Plaintiff used his walker during his therapy session on November 1, 2016. [Tr. 901]. During a cardiology appointment with James D. Yates, M.D., on December 1, 2016, Plaintiff reported "some problems ambulating." [Tr. 890]. Additionally, during a follow-up neurological appointment for his intracerebral hemorrhage with Joshua Miller, M.D., on December 13, 2016, Plaintiff reported continued dizziness and trouble with ambulation, but "[h]e has progressed now to using just a cane instead of a walker." [Tr. 939]. Further, Dr. Miller noted that Plaintiff has good coordination with upper and lower extremities upon physical examination, but that he walks with the assistance of a cane. [*Id.*].

During the administrative hearing, Plaintiff testified that he had been utilizing a walker since September of 2016, due to his acute intracerebral hemorrhage. [Tr. 46–47]. Plaintiff claimed that he cannot walk correctly without the help of his walker, and he is "very dizzy all the time." [Tr. 47]. Plaintiff testified that he only leaves his apartment to go to the grocery store once a month, and that he can walk without the help of a cart or his walker for "maybe four minutes," as well as that he could stand still for only two minutes before being in pain. [Tr. 52–53].

In the disability decision, the ALJ detailed that "[a]t the hearing, the claimant testified that he has used a cane since September of 2016 due to dizziness and difficulty walking straight, both residual effects of a cerebral hemorrhage." [Tr. 16]. Additionally, the ALJ found that Plaintiff's "status post cerebellar hemorrhage" was a severe impairment. [Tr. 14]. The ALJ reviewed that an examination on September 9, 2016 demonstrated that Plaintiff had good movement of his four limbs and intact sensation. [Tr. 17]. However, the ALJ noted that a CT scan of Plaintiff's head performed on December 13, 2016 showed "hypoattenuation/developing encephalomalacia and intraventricular hemorrhage." [*Id.*]; *see* [Tr. 907].

Social Security Ruling 96-9p provides the operative law on this point:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185, at *7 (July 2, 1996). The Sixth Circuit has explained that unless a cane or other assistive device is found to be a necessary device, it will not be considered an exertional limitation that reduces a claimant's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). "SSR 96–9p requires medical documentation of the need for the assistive device, not just a suggestion by a doctor relating to a claimant's continued use of an assistive device that the claimant purchased on his or her own." *Perry v. Berryhill*, No. 1:16-CV-2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018); *see Parrish v. Berryhill*, No. 1:16-CV-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 8, 2017) ("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required.") (collecting cases), *report and recommendation adopted by*, 2017 WL 2720332 (N.D. Ohio June 23, 2017).

However, in the present case, the ALJ did not properly apply Social Security Ruling 96-9p, as the ALJ did not determine whether Plaintiff's assistive device was medically necessary. Although Plaintiff fails to point to an initial prescription of an ambulatory device, Plaintiff's use of a cane or walker in order to recover from his intracerebral hemorrhage is well-documented throughout the medical record. Further, Plaintiff's continued use of a walker is indicated in the follow-up visits from his cardiac and neurological physicians even after his release from the

hospital. Plaintiff testified, and the medical record supports, that he continued to suffer dizziness and difficulty walking straight as the residual effects of his cerebral hemorrhage.

"The consistent reference to the use of a cane (or a walker) . . . is enough to trigger an obligation on the part of the Commissioner to decide if such use is medically necessary and, if so, to have included that factor in the RFC analysis." *Penn v. Astrue*, No. 2:09–CV–169, 2010 WL 547491, at *6 (S.D. Ohio Feb. 12, 2010); *see, e.g.*, *Dow v. Comm'r of Soc. Sec.*, No. 1:13-CV-493, 2014 WL 4377820, at *5 (S.D. Ohio Sept. 4, 2014) ("Where the use of a walker is part of the record, the ALJ is obligated to consider whether this factor would have an impact on the plaintiff's RFC."). The Court finds that as "there were multiple references in the medical evidence to the use of a cane [or walker]," it can be "inferred that such use was more than just a subjective desire of the claimant." *Penn*, 2010 WL 547491, at *6 (citing *Rivera v. Astrue*, No. CIV.A. 08-1971, 2009 WL 235353, at *5 (E.D. Pa. Jan. 29, 2009)).

The Commissioner asserts that although Plaintiff alleged trouble walking without a walker since he suffered a stroke in September 2016, "[t]he ALJ examined the evidence and found Plaintiff's subjective complaints inconsistent with the record as a whole." [Doc. 24 at 10]. The Commissioner notes that the ALJ found significant gaps in Plaintiff's treatment history, noted Plaintiff's generally conservative treatment, reviewed Plaintiff's daily activities, as well as detailed the objective medical evidence related to Plaintiff's hands and feet. [*Id.* at 10–12]. However, despite finding Plaintiff's status post cerebellar hemorrhage to be a severe impairment, the ALJ failed to delineate Plaintiff's condition before and after his stroke in examining Plaintiff's subjective complaints. Although the Commissioner asserts that the ALJ considered evidence from the entire relevant period, the provided reasons fail to assess whether Plaintiff's use of a cane or walker was a medically necessary device after suffering a stroke. For example, in reviewing

13

Plaintiff's reported daily activities and alleged significant gaps in Plaintiff's medical treatment, the ALJ did not examine Plaintiff's abilities and difficulties walking as a result of his cerebral hemorrhage.

In the disability decision, the ALJ failed to explicitly detail any conflicting evidence regarding Plaintiff's use of an ambulatory device, review whether such a device was medically necessary, or consider whether Plaintiff's use of a walker would impact his ability to perform the jobs identified by the vocational expert ("VE"). *Cf. Morrow v. Comm'r of Soc. Sec.*, No. 1:18-CV-0403, 2019 WL 1428199, at *12 (N.D. Ohio Mar. 29, 2019) ("The ALJ recognized, in her recitation of the medical evidence of record, that there was conflicting evidence concerning claimant's use of, or need for, a cane."); *Grimes v. Berryhill*, No. 3:17-CV-365-TWP-HBG, 2018 WL 2305723, at *5 (E.D. Tenn. Apr. 19, 2018) ("Accordingly, in the absence of medical documentation explaining the necessity of a cane to support Dr. Butler's opinion and Dr. Ferluga's prescription, in conjunction with Plaintiff's largely normal examination findings and normal to mild test results, the Court concludes that substantial evidence supports the ALJ's finding that 'there is no reasonable medical necessity for using a cane.'"), *report and recommendation adopted by*, 2018 WL 2305704 (E.D. Tenn. May 21, 2018). "Where there is conflicting evidence concerning the need for a cane, it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence." *Forester v. Comm'r of Soc. Sec.*, No. 16–CV–1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) (citation and internal quotation marks omitted).

"Accordingly, the ALJ did not indicate that 'she specifically considered how plaintiff's use of a walker would impact [his] ability to perform the lifting/carrying and standing/walking requirements,' or 'fulfill her obligation whether plaintiff's use of a walker would impact plaintiff's ability to perform the jobs identified by the VE.'" *Jagdeo v. Berryhill*, No. 3:17-CV-469-TWP-

14

DCP, 2019 WL 1119363, at *16 (E.D. Tenn. Feb. 19, 2019) (quoting *Dow v. Comm'r of Soc. Sec.*, No. 1:13-CV-493, 2014 WL 4377820, at *6 (S.D. Ohio Sept. 4, 2014)), *report and recommendation adopted by*, 2019 WL 1119642 (E.D. Tenn. Mar. 11, 2019). On remand, the ALJ should examine Plaintiff's need for an assistive device; and if an assistive device is found to be required, the ALJ should examine the impact of Plaintiff's need for such device on the jobs identified by the VE.

### C. ALJ's Treatment of Dr. Maffeo and Dr. Dubois' Opinions

Plaintiff claims that the ALJ failed to account for mental limitations set forth in Dr. Maffeo and Dr. Dubois' opinions, despite affording significant weight to their opinions and finding them consistent with the medical record. Plaintiff alleges that a "[c]omparison of the opinions of Drs. Maffeo and Dubois to the RFC demonstrates that they are different in critical aspects, and specifically that these experts found that Plaintiff has far greater limitations than set forth in the RFC." [Doc. 17 at 16].

Dr. Maffeo consultatively examined Plaintiff on April 8, 2015. [Tr. 399]. Dr. Maffeo noted that Plaintiff appeared moderately to severely depressed, and met at least some of the criteria for PTSD. [Tr. 401–02]. Dr. Maffeo opined that Plaintiff had no impairment in understanding and remembering, but that he had a moderate to severe impairment in sustaining concentration and persistence. [Tr. 402]. When assessing Plaintiff's ability to sustain concentration and persistence, Dr. Maffeo noted that Plaintiff made a mistake in performing serial 7s and serial 3s, that he could spell "world" backwards, but that he reported trouble concentrating in everyday situations. [*Id.*]. Additionally, Dr. Maffeo opined that Plaintiff had moderate impairment in interacting with others, as he presented as moderately to severely depressed, gets along with other people, but has withdrawn from his friends. [*Id.*]. Lastly, Dr. Maffeo found that Plaintiff had moderate

15

impairment in adapting to changes and requirements, noting that Plaintiff's impaired concentration may limit his awareness of hazards, as he does not drive due to his license being suspended, and that "[g]ot sleepy when he did drive," but that he could make plans independent of others. [*Id.*].

Dr. Dubois reviewed the evidence of record at the reconsideration level of the agency's review on April 20, 2015, and assessed Plaintiff's mental residual functional capacity. [Tr. 80–82]. Dr. Dubois found that Plaintiff had sustained concentration and persistence limitations, but that he was not significantly limited in the abilities to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted, or make simple-work related decisions. [Tr. 80]. However, Dr. Dubois opined that Plaintiff was moderately limited in the abilities to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and complete a normal workday and workweek without interruptions from psychological based symptoms. [Tr. 80–81]. Dr. Dubois found that Plaintiff could maintain concentration, persistence, and pace for simple and low-level detailed tasks, but not for detailed or complex tasks, with infrequent interruptions due to his mental health symptoms. [Tr. 81]. Dr. Dubois also opined that Plaintiff would have infrequent absences due to his mental health symptoms, would infrequently be unable to complete a normal workday, but that he could perform at a consistent pace with customary breaks within the assessed restrictions. [*Id.*].

Dr. Dubois also reviewed Plaintiff's social interaction limitations, and found that Plaintiff was moderately limited in the abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisions, and get along with coworkers or peers. [Tr. 81]. However, Dr. Dubois found that Plaintiff was not significantly limited in his abilities to ask simple questions or request assistance, maintain socially appropriate

16

behavior, and adhere to basic standards of neatness and cleanliness. [*Id.*]. Therefore, Dr. Dubois opined that Plaintiff could interact superficially with the general public, coworkers, and supervisors within the assessed restrictions. [*Id.*]. Lastly, when assessing Plaintiff's adaption limitations, Dr. Dubois opined that Plaintiff could adapt to infrequent change within the applied restrictions. [*Id.*].

In the disability decision, the ALJ assigned significant weight to Dr. Maffeo's opinion, stating it was "based on an in-person examination of the claimant and is well-supported by the exam[ination] findings, and is consistent with the medical evidence of record." [Tr. 19]. The ALJ also assigned significant weight to Dr. Dubois' opinion, stating it was "broadly consistent with the psychological examiner's opinion and with the overall medical record." [Tr. 20].

The ALJ alone is tasked with the responsibility of assessing a claimant's RFC. 20 C.F.R. § 416.1546(c). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Accordingly, the "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Id.*

Here, Plaintiff challenges the ALJ's failure to include limitations related to Plaintiff's assessed mental impairments, other than limiting him to frequent dealing with people and change. Plaintiff claims that the ALJ's RFC determination is not consistent with assessed moderate to severe impairment in sustaining concentration and persistence, as well as moderate impairments in interacting with others and adaption, in Dr. Maffeo's opinion. Further, Plaintiff challenges the ALJ's failure to include assessed limitations to simple and low-level detailed tasks, superficial contact with others, and that Plaintiff would be infrequently absent due to his mental health

17

symptoms, in Dr. Dubois' opinion. Lastly, Plaintiff claims that the RFC is not supported by the ALJ's finding of moderate limitations in interacting with others, concentration, persistence, or pace, and adaption during step three of the disability decision.[2]

Ultimately, when an ALJ fails to incorporate all of the limitations opined from a medical source who received great weight, "it does not follow that the ALJ's explanation is, therefore, procedurally inadequate, or that the RFC was not supported by substantial evidence." *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013); *see Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") (citing *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13–cv–00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)).

However, Social Security Ruling 96-8p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996). An "ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his

---

[2] While Plaintiff claims that the ALJ's step three findings are inconsistent with the RFC, the Court notes that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." [Tr. 15]; *see Bing v. Comm'r of Soc. Sec.*, No. 1:15-cv-826, 2016 WL 4410796, at *5 (W.D. Mich. Aug. 18, 2016) ("That the ALJ did not include a provision in the RFC that limited Plaintiff from contact with others even though he found moderate social difficulties at step three does not, in and of itself, constitute reversible error."); Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment . . . .").

analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

As the Court has already found that Plaintiff's case should be remanded for the ALJ to reevaluate the medical necessity of an ambulatory device, on remand, the ALJ should also detail how the RFC accounts for Plaintiff's mental impairments, including assessed limitations in social functioning, maintaining concentration, persistence, or pace, and adaption. *See, e.g.*, *Pope v. Comm'r of Soc. Sec.*, No. 15-12977, 2016 WL 8115399, at *9 (E.D. Mich. May 19, 2016) ("Without an explanation of *why* the ALJ gave great weight to a physician's opinion, but discarded portions of it in rendering the RFC finding, the courts must simply assume that the ALJ supported his decision with substantial evidence . . . This is not a robust foundation for judicial review."), *report and recommendation adopted by*, 2016 WL 4055035 (E.D. Mich. July 29, 2016).

Further, the ALJ should sufficiently explain her reasoning for failing to include any assessed limitations in a medical opinion to which she assigned significant weight. *See Marion v. Comm'r of Soc. Sec.*, No. 4:16-cv-11198, 2017 WL 1833122, at *3 (E.D. Mich. May 8, 2017) (finding "the ALJ's decision on social functioning lacks clarity" as "the ALJ's RFC determination does not address Plaintiff's significant, well-documented social limitations"); *Gonzalez v. Colvin*, No. 1:13-cv-01358, 2014 WL 1333713, at *8 (N.D. Ohio Mar. 28, 2014) (holding that the ALJ failed to account for Plaintiff's limitations in social functioning, as "the ALJ did not discuss why she omitted the 'occasional superficial interactions' limitation assigned to Plaintiff by [the nonexamining] state consultant," and although the Commissioner argues that "evidence in the record supports the ALJ's decision not to include greater limitations with regard to Plaintiff's social functioning . . . the ALJ should have analyzed and explained that evidence"). Accordingly,

the Court finds that upon remand, the ALJ should reconsider Dr. Maffeo and Dr. Dubois' opinions in the RFC determination in accordance with the above guidance.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to appropriately examine Plaintiff's need for an assistive device; and if an assistive device is found to be required, the ALJ should examine the impact of Plaintiff's need for a walker on the jobs identified by the VE. Additionally, the ALJ should reconsider the opinions of Dr. Maffeo and Dr. Dubois in the RFC determination.

ORDER ACCORDINGLY.

_____
Debra C. Poplin
United States Magistrate Judge